IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| URSULA LENHARDT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 21-4001-DDC-ADM |
| ) | |
| DEMOCRATIC PARTY HQ, et al., ) | |
| ) | |
| Defendants. ) | |

**<u>ORDER GRANTING MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS
AND REPORT AND RECOMMENDATION</u>**

Pro se plaintiff Ursula Lenhardt filed a complaint in this action naming the "Democratic Party HQ," Joe Biden, Kamala Harris, Hillary Clinton, Barack Obama, and Elizabeth Warren as defendants.[1] (ECF 1.) Ms. Lenhardt alleges that she received numerous harassing text messages asking her to support Joe Biden's 2020 campaign by asking her to vote for, contribute to, and volunteer for the Democrats and further support their political proceedings. She alleges that these text messages were illegal because she is not a United States citizen. She claims this violated 52 U.S.C. § 30121, which is a provision of the Federal Election Campaign Act ("FECA"). She also alleges that these text messages were "auto-dialed," which the court construes as claiming a violation of the Telephone Consumer Protection Act of 1991 ("TCPA"). In conjunction with Ms. Lenhardt's complaint, she also filed a Motion to Proceed In Forma Pauperis. (ECF 3.)

As discussed in further detail below, the court grants Ms. Lenhardt leave to proceed in forma pauperis ("IFP") but recommends that the presiding district judge dismiss her complaint without prejudice, in part with leave to amend. Her FECA claim should be dismissed because her

---

[1] Ms. Lenhardt filed a motion to supplement her complaint on February 17, 2021. (ECF 4.) The court grants this motion to the extent that the court considers Ms. Lenhardt's supplemental allegations and exhibits as part of the pleadings in this case.

complaint does not allege that she exhausted her administrative remedies and took the other steps necessary before filing suit under FECA's citizen-suit provision. Her TCPA should be dismissed because it fails to state a claim upon which relief can be granted, although that claim should be dismissed with leave to amend.

**I.     MS. LENHARDT MAY PROCEED IFP.**

Title 28 U.S.C. § 1915 allows courts to authorize commencing a civil action "without prepayment of fees or security therefor, by a person who submits an affidavit that . . . the person is unable to pay such fees or give security therefor." Proceeding IFP "in a civil case is a privilege, not a right—fundamental or otherwise." *White v. Colorado*, 157 F.3d 1226, 1233 (10th Cir. 1998). The decision to grant or deny IFP status under § 1915 lies within "the sound discretion of the district court." *Engberg v. Wyoming*, 265 F.3d 1109, 1122 (10th Cir. 2001). After carefully reviewing the information Ms. Lenhardt provided in the financial affidavit in support of her motion, the court waives the filing fee required for her to commence this civil action. Ms. Lenhardt is granted leave to proceed IFP.

**II.    THE COURT RECOMMENDS DISMISSING MS. LENHARDT'S COMPLAINT WITHOUT PREJUDICE, IN PART WITH LEAVE TO AMEND.**

When a plaintiff proceeds IFP, the court may screen the complaint under 28 U.S.C. § 1915(e)(2)(B). The court may dismiss the complaint if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The purpose of § 1915(e)(2) is to "discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate." *Buchheit v. Green*, 705 F.3d 1157, 1161 (10th Cir. 2012).

In addition, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). "[F]ederal courts are courts of limited subject-matter jurisdiction," and they "may only hear cases when empowered to do so by the Constitution and by act of Congress." *Gad v. Kan. State Univ.*, 787 F.3d 1032, 1035 (10th Cir. 2015) (quotation omitted). The power to hear a case "can never be forfeited or waived," and therefore the court always has an independent obligation to determine whether subject-matter jurisdiction exists. *Id.* (quotation omitted); *see also Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) ("If the parties do not raise the question of lack of jurisdiction, it is the duty of the federal court to determine the matter sua sponte.").

### A.   Legal Standard

Dismissal under § 1915(e)(2)(B)(ii) is governed by the same standard that applies to motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). To withstand dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient to state a claim for relief. *Id.* Dismissal of a pro se plaintiff's complaint for failure to state a claim is "proper only where it is obvious that the plaintiff cannot prevail on the facts . . . alleged and it would be futile to give [plaintiff] an opportunity to amend." *Curley v. Perry*, 246 F.3d 1278, 1281 (10th Cir. 2001). The court must "accept the facts alleged in the complaint as

3

true and view them in the light most favorable to the plaintiff." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

Similarly, to determine whether a plaintiff has adequately alleged subject-matter jurisdiction, the court looks to the face of the complaint. *Penteco Corp. v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991). The court accepts "the well-pleaded factual allegations as true, . . . but ignor[es] conclusory allegations of jurisdiction." *Kucera v. CIA*, 347 F. Supp. 3d 653, 659 (D.N.M. 2018) (citing *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001), and *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971)), *aff'd*, 754 F. App'x 735 (10th Cir. 2018). "The party seeking the exercise of jurisdiction in his favor 'must allege in his pleading the facts essential to show jurisdiction.'" *Penteco*, 929 F.2d at 1521 (quoting *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

Because Ms. Lenhardt is proceeding pro se, the court construes her pleadings liberally and holds them "to a less stringent standard than those drafted by attorneys." *Johnson v. Johnson*, 466 F.3d 1213, 1214 (10th Cir. 2006). In doing so, the court does not "assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The plaintiff still bears "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.*

> **B.    Ms. Lenhardt FECA's Claim Should Be Dismissed Because She Does Not Allege That She Took the Steps Necessary Before Filing Suit Under FECA's Citizen-Suit Provision.**

Ms. Lenhardt's complaint alleges that she received more than one hundred text messages from the short-code telephone number "30330" between July and November 2020 seeking donations to Joe Biden's presidential campaign or requesting other action, like volunteering or participating in a focus group. (*See* ECF 1-1.) Some messages from this number purported to be sent by individuals, including Joe Biden and the other named individual defendants. She also

4

contends that she received campaign text messages from twenty other ten-digit telephone numbers, as well as a message in January 2021 from the Sierra Club about impeaching Donald Trump via the short-code telephone number "69866." (*See* ECF 4, at 2, 4-7.) Ms. Lenhardt contends that she is not a citizen of the United States, and that the text messages she received encouraged her to take actions—like voting, donating, and volunteering—that would be illegal given her citizenship status. (ECF 1 ¶¶ III, VII.) She claims the text messages violated 52 U.S.C. § 30121, a FECA provision that prohibits foreign nationals from donating money or other things of value in connection with an election or to a committee of a political party, as well as solicitation of the same. (*See id.* ¶¶ II(B), VII.) Ms. Lenhardt's complaint states that she sent a demand letter to defendants, but she did not receive a response. (*Id.* ¶ VIII.)

The Federal Election Commission ("FEC") is generally responsible for enforcing campaign finance and election laws. With limited exceptions, Congress granted the FEC "exclusive jurisdiction with respect to the civil enforcement of [the FECA]." 52 U.S.C. § 30106(b)(1); *see also In re Carter-Mondale Reelection Comm., Inc.*, 642 F.2d 538, 545 (D.C. Cir. 1980) (stating that "Congress vested the [FEC] with 'exclusive jurisdiction'" to make initial decisions as to enforcing the FECA, and the "court must yield to that exclusivity"). An individual who believes that a FECA violation is imminent or has already occurred may file a complaint with the FEC. 52 U.S.C. § 30109(a)(1); 11 C.F.R. § 111.4(a). If the complaint contains the information required by FEC regulations, the Office of General Counsel ("General Counsel") initiates an administrative process in which the respondents are provided with an opportunity to respond to the complaint. *See* 11 C.F.R. §§ 111.5(a), 111.6(a). The FEC will decide to investigate the complainant's allegations if it determines there is reason to believe that a FECA violation occurred or is about to occur. 52 U.S.C. § 30109(a)(2); 11 C.F.R. § 111.10(a). If the FEC ultimately finds

5

probable cause, the General Counsel will attempt to reach a conciliation agreement with the respondent(s). 11 C.F.R. § 111.18(a).

If no agreement is reached, the General Counsel may recommend that the FEC authorize a civil action in the appropriate federal court. *Id.* § 111.19(a); *see also* 52 U.S.C. § 30109(a)(6)(A) (authorizing the FEC to "institute a civil action for relief" if it is unable to correct or prevent FECA violations through conciliation or other specified methods). The FEC has the power to initiate civil actions to enforce FECA. 52 U.S.C. § 30107(e) ("Except as provided in section 30109(a)(8) of this title, the power of the [FEC] to initiate civil actions . . . shall be the exclusive civil remedy for the enforcement of the provisions of this Act."). If the FEC dismisses the complaint or fails to act on it within 120 days, an aggrieved party may file a petition with the United States District Court for the District of Columbia to review the FEC's action or inaction. 52 U.S.C. § 30109(a)(8)(A); *see Stockman v. FEC*, 138 F.3d 144, 153 (5th Cir. 1998) ("Section [30109(a)(8)] is the only provision of the Campaign Act that provides for judicial review at behest of private parties . . . ."). If that court determines that the FEC's dismissal of the complaint or failure to act is contrary to law and directs the FEC to conform with a court-ordered declaration, *and* if the FEC then fails to comply with that court's order, only then may the complainant initiate "a civil action to remedy the violation involved in the original complaint." 52 U.S.C. § 30109(a)(8)(C); *see, e.g.*, *Citizens for Resp. & Ethics in Wash. v. Am. Action Network*, 410 F. Supp. 3d 1 (D.D.C. 2019) (explaining the procedural background of the complaint with the FEC). Otherwise, an individual does not have a right of action to enforce FECA. *See Cort v. Ash*, 422 U.S. 66, 74-76 (1975) ("[A] complainant seeking as citizen or stockholder to enjoin alleged violations . . . in future elections must henceforth pursue the statutory remedy of a complaint to the [FEC].").

In this case, Ms. Lenhardt's complaint does not allege that she first filed her complaint with the FEC, that the FEC dismissed her complaint or failed to timely act on it, that she subsequently obtained a court-ordered declaration in the United States District Court for the District of Columbia, or that the FEC failed to comply with any such declaration. In other words, she has not alleged that she first exhausted her administrative remedies with the FEC and fulfilled the other requirements necessary before filing suit under the citizen-suit provision of the FECA. Although Ms. Lenhardt checked the box on her pro se form complaint indicating that she presented her claims to a government agency, she references only a "demand letter" to defendants in that section. (ECF 1 ¶ VIII, at 5.) This allegation contradicts any inference that Ms. Lenhardt took the necessary steps before invoking the citizen-suit provision of FECA. According to Ms. Lenhardt, she presented a "demand letter" (not a complaint) to the defendants (not the FEC). Because Ms. Lenhardt did not fulfill the requirements prior to filing suit under the citizen-suit provision of the FECA, the court recommends that the presiding district judge dismiss Ms. Lenhardt's FECA claim.

      **C.**      **Ms. Lenhardt's TCPA Claims Should Be Dismissed.**

Ms. Lenhardt also alleges that the text messages she received were harassing, "molested" her, "violated FCC regulations," and were "auto-dialed." (ECF 1 ¶ VII, at 4; ECF 1-1, at 1.) The court construes these allegations as an attempt to state a TCPA claim. *See, e.g.*, *Gould v. Farmers Ins. Exch.*, 288 F. Supp. 3d 963, 967-70 (E.D. Mo. 2018) (finding a plaintiff who alleged she received harassing text messages of a repetitive, generic, and impersonal nature sent by an automatic telephone dialing system plausibly stated a TCPA claim); *Norman v. Sito Mobile Sols.*, No. CV 17-2215, 2017 WL 1330199, at *2 (D.N.J. Apr. 6, 2017) (screening a pro se plaintiff's complaint to determine whether his allegations regarding automatic calls and an "egregious solicitation text messaging campaign . . . utilizing SMS code" stated a TCPA claim).

7

The TCPA prohibits a person from making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system" to telephone numbers "assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Text messages qualify as a "call" under the statute. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). Political calls and text messages are generally not exempt from the ambit of the TCPA. *See Maryland v. Universal Elections, Inc*., 729 F.3d 370, 378 (4th Cir. 2013) ("The [TCPA]'s plain language demonstrates that it applies to all prerecorded phone calls, including those with a political message."); *see also Barr v. Am. Ass'n of Political Consultants, Inc*., 140 S. Ct. 2335, 2343-44 (2020) (declining to invalidate the TCPA's prohibition on robocalls in its entirety and stating that "plaintiffs still may not make political robocalls to cell phones").

### 1. Individual Defendants

The court turns first to Ms. Lenhardt's claims against the individual defendants. Ms. Lenhardt's complaint does not contain sufficient factual allegations to demonstrate Article III standing—and consequently subject-matter jurisdiction—as to these claims. To establish Article III standing, a plaintiff's complaint must allege facts showing that the plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Ms. Lenhardt's complaint alleges the first element of an injury in fact. Receipt of even a single unsolicited text message may constitute an injury sufficient to entitle a plaintiff to a remedy under the TCPA. *See Pederson v. Donald J. Trump for President, Inc*., 465 F. Supp. 3d 929, 934 (D. Minn. 2020) (declining to dismiss a complaint alleging TCPA violations arising out of campaign text messages for failure to allege an injury in fact).

8

But her complaint does not allege any facts as to the second element of Article III standing, *i.e.* facts that would suggest the text messages at issue are fairly traceable to the conduct of Joe Biden, Kamala Harris, Hillary Clinton, Barack Obama, or Elizabeth Warren.  The complaint contains no allegations as the specific conduct of any individual defendant.  Indeed, the allegations in her complaint suggest that they were *not* the work of those individuals.  The text messages from the short-code number 30330 are attached to Ms. Lenhardt's complaint.  Although some messages read as though they were sent by a specific person, they all come from the same five-digit number rather than separate personal numbers.  (*See* ECF 1-1, at 1-2.)  In addition, nearly all of the messages contain website links.  When visited, approximately seventy of those links lead to a website stating: "Paid for by ActBlue (actblue.com) and not authorized by any candidate or candidate's committee."  Approximately thirty links redirect to a website with a message from Joe Biden and the following statement: "Paid for by Biden For President, a campaign made up of millions of grassroots donors – and absolutely zero malarkey."  Thus, the website links contained in the text messages show that the messages are fairly traceable to ActBlue or Biden For President, which are third-party organizations that are not before the court.  The second element of Article III standing is not satisfied where the conduct at issue results from "the independent action of some third party not before the court."  *Lujan*, 504 U.S. at 561 (quotation omitted); *cf. Pederson*, 465 F. Supp. 3d at 934 (finding the plaintiffs had plausibly alleged a connection between a text message and the defendant *campaign organization* based in part on the fact that the message was received shortly after another message containing a link to the organization's website).

      Ms. Lenhardt's supplemental allegations and exhibits similarly do not establish any link to the individual defendants.  In fact, Ms. Lenhardt alleges that one of the text messages she complains about was sent by the Sierra Club, which is another entity that is not named in this

9

lawsuit.  (*See* ECF 4, at 4.)  She attributes other messages that were sent from a ten-digit number to a "Democratic Party supporting volunteer."  (*Id.* at 2, 6.)  Again, these messages appear fairly traceable to the actions of a third party or the Democratic National Committee rather than to any of the individually named defendants.  Ms. Lenhardt has therefore failed to meet her burden to allege facts essential to show that the court has subject-matter jurisdiction over her TCPA claims against Joe Biden, Kamala Harris, Hillary Clinton, Barack Obama, and Elizabeth Warren.

Even if Ms. Lenhardt had sufficiently alleged Article III standing, her complaint does not state plausible claims for relief against the individual defendants.  Individuals may be liable for violating the TCPA.  *Golan v. FreeEats.com, Inc*., 930 F.3d 950, 960 (8th Cir. 2019) ("Simply put, 'any person' who violates the TCPA may be liable." (citing 47 U.S.C. § 227(b)(1))).  But, to be liable under the TCPA, an individual must have initiated the offending communication, "meaning the person 'takes the steps necessary to physically place a telephone call'" or text message.  *Id.* at 961 (quoting *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 (2013)).  An individual may also be liable on an agency theory for actively authorizing, overseeing, and controlling conduct that violates the TCPA.  *See id.*; *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 162 (3d Cir. 2018).  In the agency context, liability cannot be premised on tangential involvement.  *See City Select*, 885 F.3d at 162; *Texas v. Am. Blastfax, Inc*., 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001) ("[A]n officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved.").

Here, Ms. Lenhardt does not allege that the individual defendants personally initiated or authorized the text messages at issue.  Some messages sent from the short-code number 30330 purport to be from individuals, but the court does not find it plausible to infer that they were

10

initiated by the individual defendants when the messages were from the same short-code number and contain links to ActBlue or Biden For President campaign websites. Nor does Ms. Lenhardt allege in the complaint that any individual defendant personally authorized, oversaw, or controlled sending the messages. Any such inference seems implausible for essentially the same reasons, particularly as to ActBlue's website, which specifically states that its actions were "not authorized by any candidate or candidate's committee." Because Ms. Lenhardt has made no allegations suggesting that Joe Biden, Kamala Harris, Hillary Clinton, Barack Obama, or Elizabeth Warren could be personally liable to her under the TCPA, the undersigned recommends that her claims against these defendants be dismissed. *Cf. Mais v. Gulf Coast Collection Bureau, Inc.*, No. 11-61936-CIV-SCOLA, 2013 WL 1283885, at *3-*4 (S.D. Fla. Mar. 27, 2013) (granting summary judgment to an individual defendant, where the complaint contained "scant factual allegations as to his role in the conduct complained of," and where there was no evidence that "he committed, directly participated in, or otherwise authorized the commission of wrongful acts" violating the TCPA).

### 2. The "Democratic Party HQ"

Ms. Lenhardt also names the "Democratic Party HQ" as a defendant and accuses that entity of sending her illegal text messages. According to Ms. Lenhardt, the address for the "Democratic Party HQ" is 430 S. Capitol St. SE, Washington, DC 20003 (*see* ECF 1, at 1), which is the address for the Democratic National Committee ("DNC"). A review of the text messages attached to Ms. Lenhardt's shows that five messages contain links leading to webpages with the statements: "Paid for by the Democratic National Committee **(202) 863-8000**" and "This communication is not authorized by any candidate or candidate's committee." Given this information, the court cannot conclude that Ms. Lenhardt lacks Article III standing as to the DNC because these messages appear fairly traceable to that entity. In addition, Ms. Lenhardt's supplement to her complaint alleges that

11

she received text messages from ten-digit telephone numbers sent by "Democratic Party" volunteers. (*See* ECF 4, at 5-6.) It appears that such text messages could be connected to the DNC if the court accepts Ms. Lenhardt's allegations as true, as it must at this procedural juncture.

But even if Ms. Lenhardt has Article III standing, her complaint fails to state a plausible claim against the DNC. As noted above, the TCPA protects individuals from receiving certain communications absent consent. *See* 47 U.S.C. § 227(b)(1)(A)(iii). To state a TCPA claim, a plaintiff must allege "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); *see also Zean v. Fairview Health Servs.*, 858 F.3d 520, 525-26 (8th Cir. 2017) (noting that a plaintiff's complaint "would not have stated a facially plausible claim for TCPA relief without an allegation that [the defendant] did not have his 'prior express consent' to make the calls"); *Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466, 474 (S.D.N.Y. 2018) (setting forth the same three elements).

Ms. Lenhardt alleges that the text messages she received from the short-code number 30330 were "auto-dialed." (*See* ECF 1-1, at 1.) This allegation is conclusory, but a review of the messages themselves suggests that they may have been the result of an automated system. *See Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding that it was plausible the defendant used an automatic telephone dialing system where text messages came from a five-digit short code and contained impersonal advertisements). Further, on the few occasions Ms. Lenhardt sent messages back to the 30330 number, she received no response. As for the text messages Ms. Lenhardt allegedly received from ten-digit numbers, she does not allege whether these messages were sent using an automatic telephone dialing system or not. The picture of a text message she received from a ten-digit number, included with Ms. Lenhardt's

supplemental allegations, appears to show a conversation with a live person. (*See* ECF 4, at 6.) When Ms. Lenhardt states that she is "in [her] immigration process, [and] cannot vote yet," she received a response acknowledging the content of her text message and wishing her the "best of luck with the rest of the process." (*Id.*) This conversation would tend to support an inference that at least some of the messages were sent manually rather than using an automatic telephone dialing system. *See Hampton v. Barclays Bank Delaware*, No. 18-4071-DDC-ADM, 2019 WL 4256371, at *6 (D. Kan. Sept. 9, 2019) ("[P]laintiff's allegations about a 'live person' on the call appear to contradict his conclusory allegation that [the defendant] used an ATDS."). But, as to the messages Ms. Lenhardt received from the 30330 number, it seems plausible that the DNC or its agent may have used an automatic telephone dialing system to send those text messages to Ms. Lenhardt's cellular telephone.

Nonetheless, Ms. Lenhardt still fails to state a TCPA claim because she does not allege that the text messages at issue were sent without her prior express consent, or that she revoked prior express consent but continued to receive messages. *See Aquilar v. Ocwen Loan Servicing, LLC*, 289 F. Supp. 3d 1000, 1005 (D. Minn. 2018) (explaining that if a plaintiff alleges prior express consent was initially given, he or she must plead that consent was revoked to withstand a TCPA being dismissed). The complaint contains no allegations whatsoever regarding consent. Rather, Ms. Lenhardt characterizes the messages as "illegal" and alleges that they "molested and harassed [her] to do something illegal," *i.e.* participate in election-related activities. (ECF 1 ¶ VII.) While it appears from these allegations that Ms. Lenhardt did not want to receive the text message at issue (at least at some point in time), there are no allegations from which the court could infer that she never granted the DNC express consent to contact her or that she revoked any prior consent.

13

Ms. Lenhardt thus fails to state a TCPA claim against the DNC, and the undersigned recommends this claim be dismissed.[2]

### III.   CONCLUSION

In sum, the court recommends that the presiding district judge dismiss Ms. Lenhardt's FECA claim without prejudice because she did not first pursue the proceedings with the FEC and the United States District Court for the District of Columbia that are required before she is able to invoke the citizen-suit provision in this case.  Furthermore, the court recommends that Ms. Lenhardt *not* be granted leave to amend to try to reassert this claim because of it would be highly speculative to believe that her claim would ever proceed through all of the steps necessary before filing suit under the FECA's citizen-suit provision.  It appears that only one FECA case has proceeded through all of those steps.  *See, e.g.*, *Citizens for Resp. & Ethics in Wash.*, 410 F. Supp. 3d at 1 (explaining the unique procedural background of the complaint with the FEC and recognizing that "[t]o the Court's knowledge, this is the first suit to be filed under FECA's citizen-suit provision").  Even if she were to proceed through all of those steps, it would likely take years—well beyond the anticipated pendency of this case.

The court also recommends that the presiding district judge dismiss Ms. Lenhardt's TCPA claims because she does not currently state a viable claim under that statute against any defendant.  However, it seems possible that she may be able to amend her complaint to correct the deficiencies identified above.  Accordingly, the court recommends that the TCPA claim be dismissed with leave to amend.

* * * * *

---

[2] Failure to allege the absence of prior express consent would also be fatal to Ms. Lenhardt's TCPA claims against the individual defendants.

Pursuant to 28 U.S.C. § 636(b)(1), FED. R. CIV. P. 72(b)(2), and D. KAN. RULE 72.1.4(b), plaintiff may file written objections to this report and recommendation within fourteen days after being served with a copy.  If plaintiff fails to file objections within the fourteen-day time period, no appellate review of the factual and legal determinations in this report and recommendation will be allowed by any court.  *See In re Key Energy Res. Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000).

**IT IS THEREFORE ORDERED** that plaintiff Ursula Lenhardt's Motion to Proceed In Forma Pauperis (ECF 3) is granted, and her "Motion for Submission of Supplemental Evidences/EXHIBITS" (ECF 4) is granted to the extent that her supplemental allegations and exhibits are deemed part of her complaint.

**IT IS FURTHER RECOMMENDED** that Ms. Lenhardt's complaint be dismissed without prejudice, in part with leave to amend, as discussed above.

**IT IS FURTHER ORDERED** that the clerk's office mail a copy of this Order and Report and Recommendation to Ms. Lenhardt via regular mail and certified mail, return receipt requested.

**IT IS SO ORDERED.**

Dated February 25, 2021, at Topeka, Kansas.

s/ Angel D. Mitchell  
Angel D. Mitchell  
U.S. Magistrate Judge