Ursula Lenhardt
489 South East Street
Mankato, 66956 Kansas
Phone (785) 282-8422
u.lenhardt@gmx.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **URSULA LENHARDT** | **Case No. 21-4001-DDC-ADM** |
| **Plaintiff – pro se** | |
| **vs.** | **FIRST AMENDED COMPLAINT** For Violations of: Complaint for Damages and Injunctive Relief pursuant to the Telephone Consumer Protection Act 47 U.S.C., Paragraph 227 et seq. and in accordance with the FCC rules and regulations for political campaign calls and text messages |
| **DEMOCRATIC PARTY HQ, et al** | |
| **Defendants.** | |
| | **JURY TRIAL DEMANDED** |

## Introducion

1. URSULA LENHARDT ("Plaintiff") brings this civil action complaint for damages and injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of the DEMOCRATIC PARTY HQ et al ("Defendants"), in negligently contacting Plaintiff on Plaintiff's cellular phone, in violation of the Telephone Consumer Protection Act 47 U.S.C., Paragraph 227 et seq ("TCPA"), 52 U.S.C. 30121(a)(2) and FCC rules and regulations for political campaign calls and text messages, thereby invading Plaintiff's privacy, causing stress and costs / expenses and thereby harmed plaintiff.

Plaintiff alleges as follows upon personal knowledge as to herself and to her own acts and experiences and upon information and belief including independent statistics* conducted by independent agencies and media (*as for the estimated numbers of illegal messages send to potential voters before and during the last presidential elections).

2. The TCPA was designed to prevent calls and messages like the once described within this complaint, and to protect the privacy of citizens or residents like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. ArrowFin. Servs., LLC,* 132 S. Ct. 740, 744 (2012)
Plaintiff alleges the receipt of about 300 and forwarded evidences of 123 / 120 on her cellular phone remaining, autodialed messages, received **without her prior consent.** These messages massively invaded her privacy and even blocked her cellular phone completely – so she was unable to make an urgently needed phone call around the election day the 3rd of November 2020. Following this one elderly person died - as Miss Lenhardt was unable to provide the herbal remedy for this cancer suffering person. Her cell phone was blocked completely. That person has been refused treatment at a Salina hospital, he has been send home – the herbs that just had arrived and urgently needed to be picked up were his only hope and chance. Following this Plaintiff had to endure **severe and painful** health problems due to the stress involved being helpless and unable to use her phone in this situation. It was more than just an annoying invention of privacy, unfortunately it had fatal consequences for this elderly person, as there was not day or moment to loose to have his curing herbs. Subsequently Plaintiff suffered for about 14 days of a most irregular, stressed out health condition during which Plaintiff could not eat or drink nor move normally.
On March 14, 2016 the Federal Communications Commission (FCC) issued an Enforcement Advisory (Advisory) to remind political campaigns of the "clear limits" on autodialed and prerecorded voice calls and texts under the Telephone Consumer Protection Act (TCPA), the federal statute that governs automated calling. With this Advisory, the FCC made clear that TCPA restrictions cover calls and texts made by political campaigns and other organizations involved in the 2016 election.
The Advisory summarizes TCPA restrictions **as they apply to political calls**. While manually-dialed political calls and texts are not subject to TCPA restrictions, calls and

texts to wireless numbers made with an autodialer or that deliver a prerecorded artificial voice are prohibited unless the campaign has received prior express consent from the called party. The burden of proof is on the campaign to show that it has obtained consent, and the called party may revoke that consent either orally or in writing. Additionally, **all prerecorded voice messages must contain specific identifications — like the name of the person or entity responsible for the call.** The FCC also made clear with this Advisory as of March 2016 that it will "vigorously enforce" the TCPA. Each violation of the TCPA carries with it a possible $16,000 fine from the FCC. (Which is a higher amount for a violation during a political campaign than what costumers can claim when their rights under the TCPA got violated by an aggressively advertising company or incorporation) (Similar rights when violated in Plaintiff's home country (Germany) are fined with about $60,000 per violation in order to protect and respect peoples privacy, political calls or messages do not occcure at all).

3. In enacting the TCPA Congress intended to give consumers a choice as to how telemarketers, creditors (and campaigners) may call or contact them and made specific findings that "technologies that might allow consumers to avoid such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102-243 Paragraph 11.

Toward this end, Congress found that

> banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.at Paragraph 12: see also Martin vs. Leading Edge Recovering Solutions LLC, 2012* WL 3292838 at*4 (N.D.I11.Aug 10, 2012) (citing Congressional findings on TCPA's purpose).

4. Congress also specifically found that " the evidences presented to the Congress indicated that automated or prerecorded calls (*messages are regarded as calls as*

*they arrive on a mobile device, like cellular phones*) are a nuisance and an invasion of privacy, **regardless of the type of call...**" Id. at Paragraphs 12-13, see also *Mims* 132 S. Ct. at 744.

5. As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA case regarding calls to a non-debtor (comparable to the messages received by Plaintiff in this case):

> The Telephone Consumer Protection Act....is well known for its provisions limiting junk-fax-transmissions. A less-litigated part of the Act curtails the use of automated dialers and prerecorded (or auto-dialed) (text)messages to cell-phones, whose subscribers often are billed by the minute as soon as the call is answered (or billed per message received) – and routing a call to voicemail counts as answering the call (like routing the text-message via a link to a homepage, channeling the subscriber to use the internet, billed by the amount of data used). An automated call to a landline phone can be an annoyance; an automated call (or message) to a cell phone adds expense to the annoyance.

*Soppet vs. Enhanced Recovery Co.LLC, 679F.3d 637, 638 (7th Cir. 2012)*

6. The Ninth Circuit recently affirmed certification of a TCPA class case comparable to the potential of this one (where Hundred of Millions, if not Billions of auto-dialed political campaign messages have been send to mobile devices of recipients throughout the United States – see **EXHIBIT - D- attached**). *See also Meyer vs. Portfolio Recovery Assosiates, LLC,* __F.3d__2012 WL 4840814 (9th Cir. Oct.12, 2012)

**Jurisdiction and Venue**

7. Jurisdiction is proper under 28 U.S.C. Paragraph 1332(d)(2) as Plaintiff is resident of Kansas seeking relief from Defendants who solicited to gain support for their political services throughout the United States in particular to Plaintiff's cellular

phone in Kansas and who at least in part are residing and doing business or providing their services from within the state of Washington DC.

Plaintiff also seeks damages of at least $4,500 for each message in violation of the TCPA in accordance to the FCC rules, and for pain and suffering, which when aggregated or multiplied to the proven amount of autodialed messages received exceeds the $540,000.00 threshold for Federal Court Jurisdiction. Therefore, diversity jurisdiction and the damages threshold are present - and this Court has jurisdiction.

Or their8. Venue is proper in the United States District Court for the District of Kansas as defendants are subject to personal jurisdiction (who are in part residing and doing businesses in the state of Washington DC.) at least for negligently and respectlessly inventing Plaintiff's privacy, who is residing in Kansas without any exception, causing damages and harm to Plaintiff.

**Parties**

9. Plaintiff is, and was at all times as mentioned herein, a resident of the state of Kansas. Plaintiff is, and at all times was, a "person" as defined by 47 U.S.C. Paragraph 153 (39). Plaintiff is not an American citizen yet, Plaintiff is German citizen.

10. Plaintiff is informed and believes and thereon alleges that Defendants consist of, and as at all times mentioned herein, are "persons" as defined by 47 U.S.C.Paragraph 153 (39). Defendants are and were during the time the conduct occurred, in their position as leading members of the Democratic National Party: **Mr. Joe Biden, Mrs. Kamala Harris, Mr. Barack Obama, Mrs. Hillary Clinton and Mrs. Elizabeth Warren.** Defendants or their agents provide political services and requested supportive activities for - their political campaigns. Plaintiff alleges that at all time relevant herein, defendants advertised and solicited their demands for support of their political services or campaigns to Plaintiff's cell-phone, residing in Jewell County of the state of Kansas, within this judicial district.

As for the possible amount of violations of FCC rules (for Hundred of Millions, if not Billions of time) and for violation of **52 U.S.C. 30121(a)(2)** Plaintiff forwarded a complaint to the adequate agency for investigation and further prosecution – so Plaintiff amended this complaint accordingly. Plaintiff wishes to keep the case-number regarding the potential mass-election-fraud claim confidential to make sure the investigations proceed anonymously and without interference. Meantime there are several Attorneys busy collecting addresses of harmed people in order to file TCPA Class-Actions, demanding damages exceeding $500 Millions for the possible mass-violation of FCC rules and regulation in accordance with the last presidential elections. Plaintiff brings her claims individually as the harm by these harassing, unwanted messages was more severe to her as a citizen of a foreign country because Plaintiff can not even vote yet and therefore Plaintiff had no use or intention receiving these unsolicited messages at all. All of these messages negligently asked Plaintiff to do something illegal which constitutes a conduct of at least gross neglicence - and as described within this amended complaint, it caused harmful stress to Plaintiff.
Also Plaintiff had to buy a new cellular phone with a more expensive plan to escape these unwanted, illegal messages – as these messages did not stop. Plaintiff already deleted about 200 of these text messages and forwarded the once that she received after that – these 120 autodialed texts has been printed out (also on Plaintiff's expense) and been forwarded as EXHIBIT A (15 pages) with Plaintiff's original complaint, filed the 19th of January 2021.

## Factual Allegations

11. At all times relevant herein, Plaintiff was a resident of the county of Jewell, state of Kansas. Plaintiff is a citizen of Germany. Plaintiff is and at all times mentioned herein was a "person" as defined by 47 U.S.C. Paragraph 153(39).

12. Defendants are, and at all times mentioned herein were "persons" as defined by 47 U.S.C. Paragraph 153(39).

13. Defendants at all times relevant in this case, advertised- and solicited requests for support of their political services in the state of Kansas, within this judicial district.

14. As Plaintiff is not an American citizen yet, these requests by Defendants to support their political services constituted a TCPA violation and a violation of **52 U.S.C. 30121(a)(2)** (filed for prosecution with the adequat agency) at least for the messages that requested Plaintiff to contribute to or vote for the Democratic Party. All of these auto-dialed requests were unwelcome and a nuisance to Plaintiff. Plaintiff never consent to receive these autodialed messages. These messages asked Plaintiff repeatedly to do something illegal which caused additional harmful stress to Plaintiff.

15. Within the last year before the presidential elections of Nov.3rd 2020, Plaintiff received about 300 of these unwelcome auto-dialed text-messages to her cell-phone number ending -4505, Plaintiff had to delete the first 200 in order to have space on her cellular phone for her own, privat use - but as Defendants continued to shoot these messages requesting Plaintiff to donate for, to volunteer for, or to vote for the Democratic Party or to donate to receive a phone call by Joe Biden or Hillary Clinton - Plaintiff kept the last 123 messages and forwarded these for evidences to the court (see EXHIBIT A , 15 pages incl. cover-sheet of the original complaint, filed 19th Jan. 2021 – **120 messages** of that are evidences of **received** texts).

16. Most of these, by FCC rules and regulations outlawed messages received referred to a homepage which additionally charged for the data when used by Plaintiff.

17. Shortly before the election day the 3rd of November 2020, Plaintiff received an increased amount of these unwanted messages, causing her cellular phone to be blocked for some days. Plaintiff could not open it anymore and was not able to make

an urgently needed private phone call (as described under 2., line 11-19) and Plaintiff suffered pain for about 2 weeks following this stressful situation and could not eat or drink anything nor move normally anymore. It was diminishing Plaintiff health and quality of life.

18. These about 120 text messages placed to Plaintiff's cellular phone were placed via an automatic dialing system ("ATDS") as defined by 47 U.S.C. Paragraph 227(a)(1) as prohibited by 47 U.S.C.Paragraph 227(b)(1)(A).

19. Defendants did not have any established business or other relationship with Plaintiff at the time during these messages/calls were placed.

20. The telephone number that Defendants or their agents called was assigned to a prepaid cellular telephone service for which Plaintiff incurs a charge for incoming calls or messages or using data on the internet pursuant to 47 U.S.C. Paragraph 227(b)(1).

21. These telephone messages constituted messages that were not for emergency purposes as defined by 47 U.S.C.Paragraph 227(b)(1)(A)(i). They even blocked an urgently needed telephone call comparable to an emergency call.

22. Plaintiff was never a member or customer or a voter of Defendants and never provided her phone number Defendants for any reason whatsoever. Accordingly Defendants or their agents never received Plaintiff's prior express consent to receive unsolicited text-messages, pursuant to 47 U.S.C. Paragraph 227(b)(1)(A), nor an established business-relationship pursuant to 47 U.S.C.227(c)(1).

23. Under "TCPA" text-messages are considered "calls", because they are "a form of communication used primarily between telephones." *Satterfield vs. Simon & Schuster, Inc,* 569 F.3d 946, 953-54 (9th Cir. 2009)

24. These messages or calls by Defendants or their agents violated 47 U.S.C.Paragraph 227(b)(1) and Paragraph 227(c).

25. Plaintiff has been harmed by the Defendants in at least the following ways: Defendants contacted Plaintiff on her cellular phone for solicitation purposes thereby invading Plaintiff's privacy, caused reasonless stress, physical condition and expenses – and diminished the prepaid minutes and online data amount of Plaintiff's cell-phone – and even blocked Plaintiff's phone-service for some days completely by these messages that Plaintiff never consent to receive. Plaintiff's privacy was invented and was harmed and damaged thereby. We are all territorial creatures on this planet, depending on our 'territories' or privacy – and as it is essential to our well being and to our lifes, an invention of privacy or a breach of privacy (also occurred when Defendants obtained Plaintiff's phone number from a third party without Plaintiff's knowledge or consent), must be regarded as an unwelcome attack on our personal well being and our life. Defendants conducts never provided any services or activities of any use for Plaintiff, all their illegally send messages were harassing, following nothing else but Defendants own intention. We have to consider how we affect others life, if we for example visit someone at their home – we at least ask in advance whether it would be convenient and at what time, ore else it is very ignoring just showing up and expecting others to pay full attention to our self-invited visit, without bringing any gifts or flowers…; it is not polite not paying any respect or attention to others life. Doing so is stupid and has nothing to do with freedom, as there is always a kind of responsibility involved if it is a decent form of freedom. Defendants acted self-centered and abusive without any regards to Plaintiff's life and circustances, all just to achieve their own intention, to win the presidential elections. The known fact that Plaintiff could not even vote did not stop Defendants from continuing placing their harassing auto-dialed messages on Plaintiff's cell phone. (Plaintiff also forwarded proof for that as an Attachment of one of the manually dialed additional messages received, in which Plaintiff (for at least the 7th time!) explained that she cannot vote – these manually dialed messages came from 20 different numbers also placed on Plaintiff's phone. This message was to prove that Defendants knew that Plaintiff could

not even vote and that she wanted to be opted out from Defendants' 'phone-bank'. Defendants ignored that fact, so Plaintiff had to buy a new phone and a more expensive plan.)

26. Common legal and factual questions as to Plaintiff's claim:

a) Whether within the four years prior to filing of this complaint Defendants or their agents placed more than one solicitation call or message to Plaintiff's cell-phone and who had not granted prior express consent to Defendants and did not have any established relation (business or whatsoever) with Defendants.

b) Whether Defendants obtained expressed prior written consent to place these solicitation campaign calls or messages to Plaintiff's cellular phones.

c) Whether Plaintiff were damaged thereby, and the extend for damages for such violation; ...and

d) Whether Defendants should be enjoined from engaging in such conduct in the future.

27. Defendants acted gross-neglicent. Defendants refused to act in respects generally applicable to Plaintiff, thereby a final and injunctive relief (also with regards to other affected citizens/residents by Defendants misconducts as well as to Plaintiff) is appropriate.

## FIRST CAUSE OF ACTION

**(Gross-)Negligent VIOLATIONS of the Telephone Consumer Protection Act 47 U.S.C. Paragraph 227(b)**

28. Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth in the paragraphs above.

29. The foregoing acts and omissions of Defendants constitute numerous and multible, gross-negligent violations of the TCPA and FCC, including but not limited to each and everyone of the above-sided provisions *47 U.S.C. § 227(b),* and in particular *47 U.S.C. § 227 (b)(1)(A).*

30. As in result of Defendants' negligent violations of *47 U.S.C. § 227(b),* Plaintiff is entitled to an award of $ 500.00 in statutory damages, for each and every violation, pursuant to *47 U.S.C. § 227(b)(3)(B)* plus
an award for additional stress, pain and suffering that Plaintiff had to endure as a result of Defendants gross-negligence in violation of above sided provisions of at least $1,000.00 for each and every violation. (Plaintiff proved 120 autoidialed messages by notarized evidences – about 300 were received).

31. Plaintiff is also entitled to and seeks injunctive relief prohibiting such a conduct in the future.

## <u>SECOND CAUSE OF ACTION</u>

**Knowing and /or Willfull VIOLATIONS of the Telephone Consumer Protection Act 47 U.S.C. § 227(b)**

32. Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth in the paragraphs above.

33. The foregoing acts and omissions of Defendants constitute numerous and

multible, knowing and/or willful violations of the TCPA and FCC rules, including but not limited to each and everyone of the above-sided provisions *47 U.S.C. § 227(b),* and in particular *47 U.S.C. § 227 (b)(1)(A).*

34. As in result of Defendants' knowing and/or willful violations of *47 U.S.C. § 227(b)* plus 3x the award for pain and suffering, Plaintiff is entitled to an award of $ 4,500.00 in damages, for each and every violation, pursuant to *47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227 (b)(3)(c).*

35. Plaintiff is also entitled to and seeks injunctive relief prohibiting such a conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants for the following:

## FIRST CAUSE OF ACTION

### (Gross-)Negligent VIOLATIONS of the Telephone Consumer Protection Act 47 U.S.C. Paragraph 227(b)

- As in result of Defendants' negligent violations of *47 U.S.C. § 227(b),* Plaintiff is entitled to an award of $ 500.00 in statutory damages, for each and every violation, pursuant to *47 U.S.C. § 227(b)(3)(B)* plus
an award for the additional stress, pain and suffering, Plaintiff had to endure as a result of Defendants gross-negligence in violation of above sided provisions of at least $1,000.00 for each and every violation.
Award for First Cause of Action per violation = $ 1,500.

- Any and all other relief that the Court deems just and proper.

## SECOND CAUSE OF ACTION

**Knowing and /or Willfull VIOLATIONS of the Telephone Consumer Protection Act**

**47 U.S.C. § 227(b)**

- As in result of Defendants' knowing and/or willful violations of *47 U.S.C. § 227(b)* plus the award for pain and suffering, Plaintiff is entitled to treble damages, which is an award of $ 4,500.00 in damages, for each and every violation, pursuant to *47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227 (b)(3)(c).*

- Any and all other relief that the Court deems just and proper.

## JURY DEMAND

Pursuant to the Seventh Amendment to the Constitution Of the United States of America, Plaintiff is entitled to, and demands, trial by jury.

Respectfully submitted:

By: s/ Ursula Lenhardt
Plaintiff (pro se)
489 South East Street
Mankato, 66956 Kansas
u.lenhardt@gmx.com
phone (785)282-8422

**Certificate of Service**

Served in advance on this Day, 28th February 2021 to Defendants via email Joe Biden and upon the District Court of Kansas, Topeka, Clerk of the Court via email and via postal mail, first class, prepaid the 29. March 2021 -upon

1) US-District Court, Kansas,444 S.E.Quincy, Room 490, Topeka KS 66683, and upon

2) Defendants: Democratic National Party, 430 S. Capitol St, SE Washington DC 20003

U. Lonheardt
489 S.E.
Mankato,
KS 66956

United States District Court
Clerk, Room 490
444 S.E. Quincy
Topeka, KS 66683

APR 01 2021

CLERK U.S. DIST. COURT
TOPEKA, KANSAS