IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| **URSULA LENHARDT,**<br><br>        **Plaintiff,**<br><br>v.<br><br>**DEMOCRATIC NATIONAL COMMITTEE,**<br><br>        **Defendant.** | Case No. 21-4001-DDC-ADM |

## MEMORANDUM AND ORDER

Pro se plaintiff Ursula Lenhardt[1] brings this action against defendant Democratic National Committee ("DNC"). She alleges the DNC violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b), by sending unwanted text messages to her cellular telephone using an automatic telephone dialing system and without her prior express consent. Doc. 11 at 1, 7–8, 10–12 (Am. Compl. ¶¶ 1, 14–22, 28–35); *see also* Doc. 13 at 11 (screening plaintiff's Amended Complaint under 28 U.S.C. § 1915(e)(2) and concluding that "plaintiff has alleged facts sufficient to establish standing and a plausible TCPA claim against DNC").

The Clerk entered default against defendant DNC after it failed to appear or defend this lawsuit within 21 days of service of plaintiff's Complaint. Doc. 21. Plaintiff now moves for the second part of a default proceeding—a default judgment against DNC. Doc. 22. For reasons

---

[1]     Because plaintiff proceeds pro se, the court construes her filings liberally and holds them to "a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). But the court does not become an advocate for the pro se party. *Id.* Likewise, plaintiff's pro se status does not excuse her from complying with the court's rules or facing the consequences of noncompliance. *See Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

explained below, the court grants plaintiff's Motion for Default Judgment in part and denies it in part. The court explains why, below.

## I.     Factual and Procedural Background

On March 29, 2021, plaintiff filed an Amended Complaint alleging TCPA claims against several defendants. Doc. 11 at 1–2, 5–6 (Am. Compl. ¶¶ 1, 10). Specifically, the Amended Complaint asserts two claims: (1) "(Gross-)Negligent VIOLATIONS" of the TCPA, violating 47 U.S.C. § 227(b) and (2) "Knowing and /or Willfull VIOLATIONS" of the TCPA, violating 47 U.S.C. § 227(b). *Id.* at 10–12 (Am. Compl. ¶¶ 28–35). "Plaintiff alleges the receipt of about 300 and forwarded evidence[ ] of 123 / 120 on her cellular phone remaining, autodialed messages, received without her prior consent." *Id.* at 2 (Am. Compl. ¶ 2) (emphasis omitted). Plaintiff's Amended Complaint refers to an Exhibit A she attached to her original Complaint. Doc. 11 at 7 (Am. Compl. ¶ 15 (citing Doc. 1-1)). Plaintiff asserts that this Exhibit A includes "120 messages . . . that are evidence[ ] of received texts." *Id.* (emphasis omitted). Exhibit A is a 14-page document listing 120 text messages that plaintiff received from phone number "30330." Doc. 1-1 at 2–15.

Plaintiff alleges these text messages had "fatal consequences" because the text messages "blocked [plaintiff's] cellular phone completely" and rendered plaintiff unable to provide "the herbal remedy for [a] cancer suffering person." Doc. 11 at 2 (Am. Compl. ¶ 2). As a result, "one elderly person died." *Id.* Afterward, plaintiff "had to endure severe and painful health problems due to the stress involved [with] being helpless and unable to use her phone[.]" *Id.* (emphasis omitted).

As remedy for plaintiff's first claim—negligent TCPA violations—plaintiff seeks a $500 award of statutory damages for each TCPA violation and "an award for additional stress, pain

and suffering . . . of at least $1,000.00 for each and every violation[,]" and "injunctive relief prohibiting such . . . conduct in the future." *Id.* at 11 (Am. Compl. ¶¶ 30–31). As remedy for plaintiff's second claim—knowing or willful TCPA violations—plaintiff seeks treble damages and injunctive relief. *Id.* at 12 (Am. Compl. ¶¶ 34–35).

On July 16, 2021, the court issued a Memorandum and Order that screened plaintiff's Amended Complaint under 28 U.S.C. § 1915 to determine whether it stated plausible TCPA claims against the named defendants. Doc. 13 at 4–11. The court concluded that plaintiff failed to establish standing to assert her TCPA claims against the individual defendants named in her Amended Complaint. *Id.* at 6–8. So, the court dismissed the TCPA claims against the individual defendants for lack of Article III standing. *Id.* at 8. But, the court determined that plaintiff alleged a plausible TCPA claim against DNC. *Id.* at 9–11. So, the court permitted plaintiff to proceed with her TCPA claims against DNC. *Id.* at 11.

On August 23, 2021, plaintiff moved for Entry of Default against DNC under Fed. R. Civ. P. 55(a). Doc. 18. The court granted that request because the docket reflected that the United States Marshals Service served DNC with a summons on July 29, 2021, and DNC had failed to appear and defend the lawsuit within 21 days of service. Doc. 20 at 2. So, the court directed the Clerk of Court to enter an Entry of Default against DNC. *Id.* On September 20, 2021, the Clerk entered default against DNC. Doc. 21.

Then, on October 28, 2021, plaintiff filed her Motion for Default Judgment against DNC. Doc. 22. Plaintiff's motion asks the court to enter Default Judgment under Fed. R. Civ. P. 55(b)(1). Doc. 22 at 1. She seeks a Judgment in the amount of $720,000 ($180,000 for the negligent TCPA violations alleged in Count 1 and $540,000 for the knowing or willful TCPA violations asserted in Count 2). *Id.* at 2–3. Plaintiff also seeks "injunctive relief" prohibiting

DNC from "violating the TCPA and FCC rules and regulations, thereby [invading] people['s] privacy without their consent and harming people." *Id.* at 3.  And, plaintiff asks the court to award "interest[ ] (and costs of this action payable to the court)[.]" *Id.*  DNC still hasn't appeared in this action, and thus it hasn't responded to plaintiff's Motion for Default Judgment.

## II.     Legal Standard

Federal Rule of Civil Procedure 55 provides a two-step process for securing a default judgment.  First, Rule 55(a) allows the Clerk to enter default against a party who "has failed to plead or otherwise defend" a lawsuit.  Second, after the Clerk enters default, plaintiff may request the Clerk to enter judgment in an amount that is "a sum certain or a sum that can be made certain by computation[.]" Fed. R. Civ. P. 55(b)(1).  But, when a plaintiff's claim is not for a sum certain or a sum made certain by calculation, plaintiff must apply to the court for a default judgment under Rule 55(b)(2).  When considering a motion for default judgment, the court may hold a hearing if "it needs to (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

"Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief."  *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1274 (D. Kan. 2016) (citations and internal quotation marks omitted).  The court accepts as true the well-pleaded factual allegations from plaintiff's Complaint but not allegations about the amount of damages.  *Id.*

But, even after default, "'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'"  *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quoting 10A Charles

4

A. Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice and Procedure* § 2688, at 63 (3d ed. 1998)).  The district court exercises broad discretion when deciding whether to enter a default judgment.  *Mathiason*, 187 F. Supp. 3d at 1274.

A default judgment also does not establish the amount of damages.  *Id.* at 1274–75.  Instead, plaintiff "must establish that the amount requested is reasonable under the circumstances."  *Id.* at 1275 (citing *DeMarsh v. Tornado Innovations, LP*, No. 08-2588-JWL, 2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009)).  A court may award damages "'only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts.'"  *DeMarsh*, 2009 WL 3720180, at *2 (quoting *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (further citations and internal quotation marks omitted)).

**III.    Analysis**

The court finds that plaintiff is entitled to Default Judgment against DNC on her TCPA claims based on the facts taken from plaintiff's Amended Complaint (Doc. 11), as well as the Affidavit she submitted supporting her Motion for Default Judgment (Doc. 22-2 at 2).[2]

**A.  Default**

DNC remains in default.  To date, DNC never has answered or otherwise appeared in this lawsuit.  Also, DNC never has appeared personally or by a representative at any time in this case.  Thus, written notice of the application for default judgment to DNC is not required.  *See* Fed. R. Civ. P. 55(b)(2) (requiring seven days' notice of the application for default judgment only when "the party against whom a default judgment is sought has appeared personally or by a

---

[2]     The court has subject matter jurisdiction over plaintiff's lawsuit because she alleges a federal cause of action under the TCPA.  *See* 28 U.S.C. § 1331 (conferring "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").

representative"); *see also Winfield Assocs., Inc. v. Stonecipher*, 429 F.2d 1087, 1091 (10th Cir. 1970) (denying relief from a default judgment entered by Illinois district court without notice to defendant because the Illinois court concluded that defendant had not entered an appearance in the case); *Loc. Union No. 226 Int'l Bhd. of Elec. Workers Open End Pension Tr. Fund v. Flowers Elec., Inc.*, No. Civ. A. 04-2237-CM, 2004 WL 2278562, at *1 (D. Kan. July 23, 2004) (holding that defendant's acceptance of service was not an appearance for purposes of Rule 55(b)(2), and thus concluding that no written notice of the motion for default judgment was required because defendant had not appeared in the action (citing *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 937 (5th Cir. 1999))).

Nevertheless, plaintiff has provided DNC notice of her motion. First, on October 6, 2021, plaintiff sent a letter to the DNC, both by facsimile and certified mail, notifying the DNC that she intended to file a Motion for Default Judgment. Doc. 22-1 at 1. She advised the DNC that the court had docketed the Rule 55(a) Entry of Default and enclosed a copy of the Entry of Default. *See id.* (citing Doc. 21); *see also id.* at 3 (attaching Clerk's Entry of Default). Then, on October 28, 2021, plaintiff filed her Motion for Default Judgment. Doc. 22. According to the motion's Certificate of Service, plaintiff provided a copy of her Motion for Default Judgment to the DNC by facsimile. Doc. 22 at 4; *see also* Doc. 23 (Submission of Proof of Service). Still, the DNC never responded to the motion, nor did it make any other appearance in the case.

A court may enter default judgment only against defendants whom the court determines aren't minors or incompetents. Fed. R. Civ. P. 55(b). The record doesn't contain any evidence suggesting that DNC is a minor or incompetent person. To the contrary, plaintiff specifically asserts that DNC "is not an infant or incompetent[.]" Doc. 22 at 2. So, the court may enter default judgment against DNC.

### B. TCPA Liability

As already stated, plaintiff's Amended Complaint alleges TCPA violations against DNC. Plaintiff offers evidence of 120 TCPA violations in the form of text messages dated from July 20, 2020 to November 4, 2020 (Doc. 1-1). Plaintiff has alleged—and DNC hasn't contested—that DNC sent these 120 text messages to plaintiff's cellular telephone, using an automatic telephone dialing system, and without plaintiff's prior express consent. Doc. 11 at 1, 7–8, 10–12 (Am. Compl. ¶¶ 1, 14–22, 28–35). Because DNC is in default, it lacks standing to contest these factual allegations, so the court accepts them as true. *Mathiason*, 187 F. Supp. 3d at 1274 (citations and internal quotation marks omitted).

Plaintiff's allegations suffice to establish TCPA violations. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (listing the "three elements of a TCPA claim" as: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent" (citing 47 U.S.C. § 227(b)(1))); *see also Lee v. loanDepot.com, LLC*, No. 14-1084-EFM, 2017 WL 590263, at *2 (D. Kan. Feb. 14, 2017).[3] Thus, plaintiff is entitled to default judgment against DNC on her claims that DNC violated the TCPA.

### C. TCPA Damages

Because plaintiff has established that the DNC is liable for TCPA violations, the court now determines the damages plaintiff may recover for those violations. Plaintiff seeks actual damages, treble damages, injunctive relief, post-judgment interest, and costs. She supports her requested damage award using the Amended Complaint's allegations (Doc. 11), the evidence of the text messages she received (Doc. 1-1), and an Affidavit supporting the Motion for Default

---

[3] "A text message to a cellular telephone" . . . "qualifies as a 'call' within" the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016).

Judgment (Doc. 22-2 at 2).  Based on this record, the court finds that no evidentiary hearing is necessary to determine the amount of damages.  *See DeMarsh*, 2009 WL 3720180, at *2 (explaining that the court may award damages "'only if the record adequately reflects the basis for [the] award via a hearing *or a demonstration by detailed affidavits establishing the necessary facts*'" (emphasis added) (citations and internal quotation marks omitted)); *see also* Fed. R. Civ. P. 55(b)(2) (instructing that a court "*may* conduct" a hearing on a motion for default judgment but never mandating a hearing (emphasis added)).

The damages provision of the TCPA permits a plaintiff to bring "(A) an action . . . to enjoin [the TCPA] violation," "(B) an action to recover for actual monetary loss from [the TCPA] violation, or to receive $500 in damages for each such violation, whichever is greater," or "(C) both such actions."  47 U.S.C. § 227(b)(3).  Also, if the court finds that "defendant willfully or knowingly" violated the TCPA, the court, "in its discretion," may increase the monetary award "to an amount equal to not more than 3 times the amount available under subparagraph (B)[,]" *i.e.*, $500.  *Id.*

### *Actual Damages*

As just stated, the TCPA permits a plaintiff to recover "for actual monetary loss from [the] violation, or to receive $500 in damages for each such violation, whichever is greater[.]"  47 U.S.C. § 227(b)(3)(B).  Plaintiff asks for an award of $1,500 for each of the 120 TCPA violations.  Doc. 22 at 2.  She asserts she is entitled to this damage award "for the additional stress, pain and suffering" that she has sustained from the TCPA violations.  *Id.*  To support the requested award, she cites a "Witness-Statement" from Warren Heinen.  *Id.* (citing Doc. 15-1 at 7).  Mr. Heinen asserts that he contacted plaintiff the day before the 2020 election "to obtain a cancer curing herbal remedy for [his] friend and neighbor."  Doc. 15-1 at 7.  He claims that

plaintiff's "cell phone was blocked[,]" which rendered plaintiff "unable to forward" a text message to Mr. Heinen to pick up the herbal remedy. *Id.* He asserts that plaintiff told him she "suffered cramps" and that "she felt bad and was in pain" because of the stress caused by the blocked cell phone messages. *Id.* Also, Mr. Heinen asserts, "for [his] friend who suffered from cancer, the herbal remedies also arrived some days too late and he sadly passed away[.]" *Id.*

Mr. Heinen's unsworn "Witness-Statement" fails to provide the necessary, detailed facts to support a $1,500 award for each of the 120 text messages plaintiff received from DNC. Although the court recognizes that the unwanted text messages may have produced some stress for plaintiff, she fails to show that the "actual monetary loss" from the text messages amounts to $1,500 for each violation. And, Mr. Heinen's allegations about plaintiff's inability to provide a herbal remedy to a cancer patient are too attenuated from the alleged TCPA violations to support the actual damage award plaintiff seeks.

Because plaintiff has failed to come forward with evidence supporting an award for "actual monetary loss" for the TCPA violations, she is entitled to statutory damages of $500 for each TCPA violation. Because plaintiff alleges she received 120 text messages violating the TCPA, she is entitled to $60,000 in actual damages. Thus, the court awards her this sum for actual damages.

### *Treble Damages*

Plaintiff also seeks treble damages for DNC's willful and knowing violations of the TCPA. As already explained, the TCPA allows a court, "*in its discretion*," to "increase the amount of the" the actual damages award "to an amount equal to not more than 3 times" the actual damages award. 47 U.S.C. § 227(b)(3) (emphasis added). Here, the court exercises its discretion and declines plaintiff's request for a treble damages award because her filings don't

provide any facts showing that DNC's violations were knowing or willful. Instead, plaintiff just makes conclusory allegations of willful or knowing violations. And, those conclusory allegations can't suffice to support a treble damages award.

Other courts have concluded that conclusory allegations of willful or knowing TCPA violations "are legal in nature, 'and as such need not be accepted as true' at this stage of the pleadings." *Castro v. Cap. One Servs., LLC*, No. 8:16-CV-889-T-17TGW, 2017 WL 4776973, at *5 (M.D. Fla. Aug. 3, 2017) (quoting *Dores v. One Main Fin.*, No. 1:15-cv-01609-LO-MSN, 2016 WL 3511744, at *3 (E.D. Va. June 1, 2016)). And, courts have refused to award treble damages for TCPA violations based on such conclusory allegations of willful or knowing violations. *See id.* at *5 (refusing to award treble damages "given the lack of record evidence regarding the alleged willfulness of the Defendants' conduct"); *see also Woods v. CV McDowell, LLC*, No. H-17-0152, 2018 WL 1187492, at *4 (S.D. Tex. Feb. 5, 2018), *report and recommendation adopted by* No. 4:17-CV-00152, 2018 WL 1183714 (S.D. Tex. Mar. 5, 2018) (denying request for treble damages because "there are simply insufficient allegations in the Complaint, and no evidence submitted by Plaintiff[ ] with his Motion for Default Judgment, that would support an award of treble damages based on defendant's willful violations of § 227(b)(1)(B)"); *Health One Med. Ctr., Eastpointe, P.L.L.C. v. Mohawk, Inc.*, No. 16-cv-13815, 2017 WL 1132337, at *2 (E.D. Mich. Mar. 27, 2017) (denying request for treble damages under the TCPA because plaintiff "failed to articulate what actions or conduct would support . . . a finding" that defendant's "violations were willful or knowing"); *Dores*, 2016 WL 3511744, at *3 ("The sparse record in this case does not adequately support a finding that Defendant acted willfully or knowingly." (internal quotation marks omitted)).

Also, several courts have noted, in "similar situations, 'when liability is established through default judgment rather than the merits, courts routinely award the minimum statutory damages.'" *Dores*, 2016 WL 3511744, at *3 (quoting *Malibu Media, LLC v. Flanagan*, No. 2:13-CV-5890, 2014 WL 2957701, at *3 (E.D. Pa. July 1, 2014)); *see also Castro*, 2017 WL 4776973, at *5 (quoting *Dores*, 2016 WL 3511744, at *3).

For the same reasons here, the court exercises its discretion afforded by the TCPA and declines to award plaintiff treble damages. Plaintiff's Amended Complaint contains merely conclusory allegations of willful or knowing conduct by DNC. And, the record contains no other evidence showing that DNC willfully or knowingly violated the TCPA. Thus, the court denies plaintiff's request for a treble damage award.

### *Injunctive Relief*

Next, plaintiff asks the court for "injunctive relief" prohibiting DNC from "violating the TCPA and FCC rules and regulations, thereby [invading] people['s] privacy without their consent and harming people." Doc. 22 at 3. As already discussed, the TCPA permits the court to award injunctive relief in the form of enjoining violations of the TCPA. 47 U.S.C. § 227(b)(3)(A). Also, a court may "order injunctive relief through default judgment." *Operating Eng'rs Loc. No. 101 Pension Fund v. Christiansen-Foust Steel, LLC*, No. 07-2068-KHV, 2007 WL 1455889, at *1 (D. Kan. May 15, 2007) (first citing *Meitler Consulting, Inc. v. Dooley*, No. 05-2126-DJW, 2006 WL 4041752, at *4 (D. Kan. Nov. 1, 2006); then citing *Hamstein Music Co. v. Bait Shack, Inc.*, No. 00-4099-RDR, 2001 WL 311186, at *1 (D. Kan. Feb. 12, 2001)); *see also Hermeris, Inc. v. McBrien*, No. 10-2483-JAR, 2012 WL 1091581, at *2 (D. Kan. Mar. 30, 2012) ("Courts regularly issue injunctions as part of default judgments." (citation and internal quotation marks omitted)).

To secure injunctive relief against future TCPA violations, a plaintiff must make "a showing that a violation of the statu[t]e is about to be committed[.]" *Roylance v. ALG Real Est. Servs. Inc.*, No. 14-cv-02445-BLF, 2015 WL 1544229, at *1 (N.D. Cal. Apr. 3, 2015) (citing *United States v. Laerdal Mfg. Co.*, 73 F.3d 852, 855 (9th Cir. 1995)); *see also Berger Chiropractic LLC v. Hilltop C&I, Inc.*, No. 4:16CV00678 AGF, 2016 WL 6650702, at *1 (E.D. Mo. Nov. 10, 2016) (requiring a showing of "a likelihood of future harm" for injunctive relief under the TCPA).

Here, plaintiff has established that DNC violated the TCPA in the past by sending plaintiff unsolicited text messages. But, neither plaintiff's Amended Complaint nor any of her other filings show a likelihood of future TCPA violations by DNC. In similar circumstances, courts have denied requests for injunctive relief under the TCPA. *See Berger*, 2016 WL 6650702, at *1 (denying request for injunctive relief "enjoining Defendant from violating the TCPA" because plaintiff hadn't "shown a likelihood of future harm"); *see also Kopff v. Roth*, No. 05-798(JDB), 2007 WL 1748918, at *2 (D.D.C. June 15, 2007) (denying request for injunctive relief because "plaintiffs have not alleged or proffered into evidence anything that would indicate to this Court that [defendant] has continued to violate the TCPA" and if defendant "does violate the TCPA in the future, he would, of course, potentially be subject to additional, independent legal action"). Because plaintiff hasn't made a showing of a likelihood of future harm stemming from DNC's violation of the TCPA, the court denies plaintiff's request for injunctive relief.

### *Interest and Costs*

Finally, plaintiff asks the court to award "interest[ ] (and costs of this action payable to the court)[.]" Doc. 22 at 3; *see also* Doc. 22-2 at 2 (seeking default judgment that includes

"interest from the date of judgment as provided by law"). An award of post-judgment interest[4] "achieves the statutory goal of compensating the plaintiff while removing defendant's incentive to delay payment of the judgment." *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1281 (D. Kan., 2016) (awarding post-judgment interest on default judgment under 28 U.S.C. § 1961(a) (citations and internal quotation marks omitted)). Applying these standards, the court finds that an award of post-judgment interest is warranted. Thus, the court grants plaintiff's request for post-judgment interest.

Also, plaintiff may apply to recover costs under 28 U.S.C. § 1920 by complying with the procedure for filing a bill of costs under D. Kan. Rule 54.1.

## IV.   Conclusion

For reasons explained, the court grants plaintiff's Motion for Default Judgment (Doc. 22) in part and denies the motion in part, consistent with this Memorandum and Order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion for Default Judgment (Doc. 22) is granted in part and denied in part. The court directs the Clerk of the Court to enter Default Judgment against defendant Democratic National Committee in the

---

[4]   Plaintiff never makes a specific request for prejudgment interest. Even if plaintiff's filings—construed liberally—include such a request, the court denies a prejudgment interest award. The court has discretion to decide whether to award prejudgment interest. *Hofer v. Unum Life Ins. Co. of Am.*, 441 F.3d 872, 879 (10th Cir. 2006). And, the court decides whether prejudgment interest is warranted by considering (1) whether such an award will compensate the injured party and (2) whether the equities preclude such an award. *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1286 (10th Cir. 2002); *see also Ireland v. Dodson*, 704 F. Supp. 2d 1128, 1140 (D. Kan. 2010) ("Prejudgment interest compensates the injured party for being deprived of the monetary value of his loss from the time of the loss to the payment of the judgment." (citation and internal quotation marks omitted)). Exercising its discretion, the court concludes that prejudgment interest isn't warranted here because the TCPA "involves a statutory damages remedy that far exceeds actual damages and is fundamentally punitive in nature." *Kopff*, 2007 WL 1748918, at *2 (denying request for prejudgment interest award in TCPA case because such an award is discretionary and the purpose of a prejudgment interest award is to compensate plaintiff for any delay in payment resulting from the litigation); *see also Salerno v. Credit One Bank, N.A.*, No. 15-CV-516 (JLS), 2020 WL 4339219, at *3 (W.D.N.Y. July 28, 2020) (declining to award prejudgment interest because "the TCPA allows for statutory damages that exceed actual damages"). Consistent with this reasoning and precedent, the court declines to award prejudgment interest.

amount of $60,000, plus post-judgment interest.  Also, plaintiff may apply to recover costs by complying with the procedure for filing a bill of costs under D. Kan. Rule 54.1.

**IT IS SO ORDERED.**

**Dated this 12th day of January, 2022, at Kansas City, Kansas.**

<u>**s/ Daniel D. Crabtree**</u>
**Daniel D. Crabtree**
**United States District Judge**